No. 40,699

STATE OF KANSAS, *Appellee,* v. WILLIAM MAJORS, *Appellant.*

(323 P. 2d 917)

Opinion filed April 12, 1958.

*Elisha Scott* and *Samuel C. Jackson,* both of Topeka, argued the cause, and *John J. Scott* and *Charles S. Scott,* both of Topeka, were with them on the briefs for the appellant.

*Robert F. Duncan,* county attorney, argued the cause, and *John Anderson, Jr.,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal by defendant from a conviction for the crime of burglary in the first degree.

Defendant was arrested under a warrant issued upon a complaint charging him in the first count with unlawfully, willfully, feloniously and with intent to commit rape, breaking and entering in the nighttime, another's dwelling house in which there was a human being, Ruthanna Gore. The second count charged the same degree of burglary with intent to commit larceny.

At the conclusion of the preliminary hearing in the city court of Atchison on October 26, 1956, that court dismissed the second count and took under advisement the determination of the first count. On November 9, 1956, the court bound defendant over for trial by the Atchison district court on the second count but on November 27, 1956, upon reconsideration, the city court dismissed both counts of the original complaint and bound defendant over for trial by the district court upon the charge of burglary in the first degree with intent to commit larceny and with intent to commit rape—both in one count under G. S. 1949, 21-513.

The information filed in the district court charged defendant with unlawfully, feloniously, willfully and forcibly breaking and entering the dwelling house of Faris W. (Bud) Gore in which there was a human being, Ruthanna Gore, in the nighttime, with intent to commit larceny and with intent to commit rape.

The journal entry of the trial court showed the defendant filed a motion for a bill of particulars and on January 12, 1957, the trial court overruled this motion with the exception of paragraph three thereof which was allowed. That paragraph requested a bill of particulars stating the time of day or night the offense was alleged to have been committed. While not specifically shown in the record, this apparently was the reason the state filed an amended information which enlarged on the description of the dwelling and as to the definiteness of the time the offense was committed, stated, ". . . and more specifically shortly before 3:00 o'clock a. m. . . ."

The journal entry further provided that on January 14, 1957, upon a hearing of the state's motion to advance the cause, the trial court informed defendant of the nature of the charge against him (G. S. 1949, 21-513), the punishment therefor of confinement and hard labor for not less than ten nor more than twenty years (G. S. 1949, 21-523), and the double penalty in the event he had a previous felony conviction. (G. S. 1949, 21-107a.) Then the trial court informed defendant of his right to have the amended information read to him, of his right to assistance of counsel of his own choosing (Maurice P. O'Keefe, Jr., had so appeared at each step of the proceedings), and to trial by jury. Thereupon the defendant waived the reading of the information and entered a plea of not guilty to the charge of burglary in the first degree as contained against him in the amended information. The case was advanced for trial and was commenced on January 21, 1957. At approximately 4:05 o'clock on January 25, 1957, the jury returned its verdict finding the defendant guilty of burglary in the first degree as charged in the amended information.

In his motion for new trial defendant for the first time complained, as he does here, that he did not have a preliminary examination on the charge for which he was bound over for trial in the district court and for the commission of which he was charged in the information. We are not convinced this was error (*State v. Handrub*, 113 Kan. 12, 14, 213 Pac. 827) but even if it were, the contention is too late to justify a reversal under our ruling in *State v. Osburn*, 171 Kan. 330, 232 P. 2d 451, wherein the defendant, as here, claimed that he did not have a preliminary examination on the charges which were filed against him in the district court and on which he was tried and found guilty by the jury. It was there stated:

"Appellant waived arraignment, pleaded not guilty, and went to trial on the information. Thereafter, under our decisions, the subject of preliminary examination [citations] was no longer material." (p. 335.)

The next specification of error which attracts attention has to do with the arguments to the jury. Defendant complains of the prosecution's final argument and counsel for the state counters with the sole contention that he was justified in his argument by the closing remarks of defense counsel to which no objection had been lodged by the state. We have examined the remarks of defense counsel and are unable to arrive at any such conclusion. To under-

stand the basis for defendant's objections to the state's closing argument more clearly, we are setting out below what appears in the record on this point:

"By Mr. Duncan [county attorney]: They have brought it in here that the County Attorney is trying to make a name for himself. That is not right. It cost a lot of money for the taxpayers of Atchison County to put on this trial and I am not here to make any name for myself, but I will tell you why I am here. I could have disposed of this case before it ever came to you. I could have thrown out—

"Mr. O'Keefe, Jr.: I object to this kind of argument.

"Mr. Duncan: They opened it up your Honor.

"Mr. O'Keefe, Jr.: It is unorthodox for him to say that he could have disposed of this case. We don't know anything about the facts.

"Mr. Duncan: Wait and see what I have to say.

"The Court: The Court assumes that you will hold your argument within the evidence as presented in what you are going to say.

"Mr. Duncan: Additional rebuttal of what they brought up previously.

"The Court: Just so you keep your argument within the evidence in this case.

"'Mr. Duncan: As I say, this is time consuming. It is consuming your valuable time in this case. We could have possibly disposed of it by throwing out an offer of a plea to a lesser included offense and get rid of this for nine months.

"Mr. Potter: I am going to object.

"Mr. O'Keefe, Jr.: That is prejudicial.

"The Court: Objection is sustained. That is not within the evidence. Sustained.

"Mr. Duncan: We have one material thing involved here gentlemen, whether a person who happened to be thwarted, thank God we happened to get him—or Justine Anderson happened to get him in time. We have the jury, you have to determine whether he is going to be allowed to go out and repeat this same thing that he went through here and has already been proved as established by the evidence which was produced in this court room, and your home and my home is at stake. And I point out to you that everyone who got up here in his behalf and asked you to let him go out there and do that again—not a one of them have a home and a family, a wife and children to protect, here."

Counsel for the defense then moved as follows:

"If your Honor please before we go any further I would like to move for a mistrial because of remarks made by the prosecuting attorney in his argument.

"The Court: Your motion is overruled."

It is the duty of a county attorney in a criminal prosecution to see that the state's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just con-

viction, but he should always bear in mind that he is an officer of the court and as such he occupies a quasi-judicial position whose sanctions and traditions he should preserve. (23 C. J. S., Criminal Law, § 1081, p. 519.) He should not appeal to the self-interests of the jurors including their social, class, and business prejudices (53 Am. Jur., Trial, § 499, pp. 402-403) and neither should he appeal to their self-interests as taxpayers. (33 A. L. R. 2d anno. 459, *et seq.*; 53 Am. Jur., Trial, § 499, p. 403.) Appeals of this kind are generally highly improper and are not to be condoned because they are obviously prejudicial to the defendant's right to a fair trial.

As the record reflects, the county attorney did not discontinue his improper remarks even after defense counsel objected and the trial court warned him that he was to stop this line of argument and confine his remarks within the range of the evidence. Although an attorney may indulge in impassioned bursts of oratory or may use picturesque language as long as he introduces no facts not disclosed by the evidence, he is bound to remember that he is an officer of the court, that his liberty of argument must not degenerate into license, and that he should always be decorous in his remarks to the extent that they do not impair administration of justice. (88 C. J. S., Trial, § 169, p. 337; 53 Am. Jur., Trial, § 458, p. 359-360.) Where an attorney persists in objectionable argument after the trial court has admonished him, as it did here, then the court may, and should, declare a mistrial, or grant a new trial. (*State v. Ryan*, 141 Kan. 549, 553, 42 P. 2d 591; 88 C. J. S., Trial, § 202, p. 401; 53 Am. Jur., Trial, § 507, p. 410.) No possible doubt should have remained in counsel's mind that he should discontinue such improper argument or that by his failure to do so he was flying in the face of an order of mistrial or the granting of a new trial. Further, it was the duty of the trial court to try to stop the unprofessional discussion of the county attorney and when that attempt failed, the jury should have been admonished to disregard the argument. Failure by the trial court herein to so admonish the jury was prejudicial error. (*State v. Netherton*, 128 Kan. 564, 279 Pac. 19.)

Counsel for the state then referred to the probability of disposing of the case by throwing out an offer of a plea to a lesser included offense and "get rid of this for nine months." An objection was made and sustained but again the trial court failed to admonish the jury to disregard the argument. This was as reprehensible as, if not more so, than the reference to taxpayers.

In civil cases offers of compromise or settlement are generally not admissible in evidence (2 Hatcher's Kansas Digest, rev. ed., Evidence, § 258, p. 578; 5 West's Kansas Digest, Evidence, § 213 (1), p. 93) and as a result an attorney cannot refer thereto in his argument to a jury. (For a discussion of compromise, see *In re Estate of Case*, 180 Kan. 53, 59, 299 P. 2d 589.) This rule is based upon a policy that encourages settlement of legal controversies and the making of such an offer of compromise is not a proper subject of comment by counsel in argument to the jury. Inappropriate reference to such offer unless it clearly appears from the record that the verdict of the jury was not affected is ground for the granting of a new trial. Remarks by a prosecuting attorney in his argument to the jury implying that the defendant has made incriminating statements to him which are not in evidence are highly improper and constitute grounds for reversal of the judgment. (53 Am. Jur., Trial, § 480, pp. 387-388.) In view of the record before us, it is impossible to say that the verdict of the jury was not affected by these remarks.

The only conclusion that can be reached therefore is that counsel for the state in his closing argument, over the objections of the defense and the admonitions of the trial court, persistently tried to comment on matters entirely outside the record which were in themselves prejudicial so that the defendant did not have a fair trial. The comments were not withdrawn by him and the jury was not admonished by the trial court to disregard them. The judgment and conviction by the trial court is reversed with directions to set aside the verdict and grant the defendant a new trial.

JACKSON, J., not participating.