No. 47,007

STATE OF KANSAS, *Appellee*, v. GARY NEWMAN, *Appellant*.

(515 P. 2d 814)

Opinion filed November 3, 1973.

*John B. Markham*, of Parsons, argued the cause and was on the brief for the appellant.

*Daniel Brewster*, county attorney, argued the cause, and *Vern Miller*, attorney general, and *John Sherwood*, assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Gary Newman was convicted by a jury of grand larceny as denounced in K. S. A. 21-533. New trial was denied, sentence was imposed and Newman now appeals.

The property which was the subject of appellant's conviction was allegedly that of his employer, Travel Industries Inc., Oswego, Kansas, a manufacturer of travel trailers and pickup campers. Appellant was hired by this company on March 9, 1970. He worked initially as an security guard and as such had keys and access to all areas in the company's warehouse. There were areas in the warehouse to which the average employee had no access. During the period appellant was employed as a security guard there were no thefts from the warehouse.

On March 27, 1970, appellant's position was changed from security guard to one on the assembly line where trailers were constructed. Appellant worked on this line until July 14, 1970. During this period shortages of hand tools, small power tools and other items became evident and on July 7, 1970, an inventory was taken which revealed a number of missing items.

The general manager of Travel Industries was informed by an employee of his brother that he had seen certain missing items at

appellant's residence in Oklahoma. As a result the manager journeyed to the farm of appellant's grandmother in Craig county, Oklahoma, on July 14, 1970, and there he observed certain of the missing items in a shop building behind a trailer in which appellant lived, which building was connected with appellant's trailer by an intercom system. Pursuant to search warrant recovery was made of property which appellant was charged with stealing from Travel Industries.

Appellant's principal contention upon appeal is that the trial court improperly admitted certain prosecution exhibits into evidence. These exhibits consisted of the items allegedly stolen together with certain company records, including an inventory used by the manager to aid in identifying certain of the items recovered at appellant's residence. In his identification as to some of the stolen items the manager used company color coding and the fact they were still in boxes addressed to the company, some he identified by reason of their unique size and character, being of a type used by the company but not generally sold to the public, and he identified the remaining items by comparing the serial numbers on them to those contained on the inventory, exhibit 19.

Appellant objected to all exhibits offered by the state along with the testimony relating thereto and his objections were sustained as to a number of the items because the trial court believed they had not been properly identified.

The main challenge now is directed against exhibit 19, the so-called inventory. This exhibit consisted of a number of yellow tablet sheets stapled together, several of which were carbon copies. Some of the sheets contained a brief listing of tools with serial numbers for each. Concededly, the inventory contained many tools having no connection with the case, including those listed on the sheets which were carbon copies.

Appellant argues the inventory was not the best evidence, that there was insufficient foundation laid for its admission in that no one who prepared it testified in the case and it did not appear to be a reliable business entry. Appellant's contentions are without merit. The sponsoring witness for the challenged document was the general manager of the company whose property was missing. He described in considerable detail the method and practice employed in its making and keeping. As to certain of the items whose cost was chargeable annually as expense for tax purposes, distinguished

from items depreciated over a period of more than one year, this record was the only one the company had. Other more permanent records such as purchase orders and receipt forms were kept only for depreciable items. The record was compiled routinely from information supplied by the assembly line supervisors where the items were used. When not needed for use in the particular work areas the items were placed in storage. We need not further elaborate the manager's testimony—suffice it to say the exhibit amply qualified as a business entry pursuant to K. S. A. 60-460 (*m*) (see *Jay-Ox, Inc., v. Square Deal Junk Co., Inc.*, 208 Kan. 856, 494 P. 2d 1103). Appellant's arguments against the exhibits really go to their weight rather than their admissibility. The wide range which business entries may take without losing their status as admissible records is well illustrated in a statement in an annotation on "Books of Account" (17 A. L. R. 2d 235) as follows:

"The courts are generally agreed that no particular form is essential in determining the status of an account book as one of original entries, such unusual items as notched sticks and shingles having been regarded as admissible in evidence within the purview of the rule as to such entries." (p. 243.)

We have examined other complaints in connection with the admission of exhibits, foundation for each was sufficiently shown and further discussion is not warranted.

Certain of appellant's specifications of error assert misconduct in the closing argument of the county attorney, the predecessor in office of present counsel for the state.

The record reveals that defense counsel apparently contended in his argument to the jury at the time of the alleged theft appellant did not have keys to the particular area from whence the property was taken. To this argument the prosecution responded:

"How do we know that, gentlemen? At any drugstore or hardware store you can have keys copied; and it's really not very expensive."

Appellant's counsel promptly objected to the statement, which objection was sustained. No request was made that the court admonish the jury to disregard the statement and no such admonition was given. Later on the county attorney remarked:

"There was never any evidence that he turned those keys back in, so, gentlemen, it could have happened at any time with the access this man had with any of these keys at that property down there at Travel Industries at Oswego any time during that period; and we have even narrowed it down to a week's time between the date that these tools were found down in Oklahoma."

No objection was made to this latter comment. Appellant now asserts it was improper for the county attorney to make further mention of keys after the first objection had been sustained. We see nothing prejudicial or even improper in the conduct complained of. No objection was voiced to the last mention of keys. As to the former it would appear counsel was advancing a hypothesis as to how appellant might have gained access to the area from whence the property was taken—a not unreasonable inference which could have been drawn by reason of his possession of keys while acting as a security guard. In *State v. Johnson*, 210 Kan. 288, 502 P. 2d 802, we stated:

"In summing-up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in the discussion of it. [Citations] Defendant's complaint appears to be more of an afterthought since no objection was lodged nor was any request made to strike the objectionable statements with an admonition to the jury. It is firmly established in this jurisdiction that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument to the jury where no objection is lodged." (pp. 296-297.)

Appellant's next objection arises from the following argument and action by the county attorney:

"Now, he's talking about the market value of these tools and he picks one up, I think it was Exhibit 3, and indicates to you that he thinks there might be something missing off of it. Well, I frankly am not going to either dispute or agree with him; but I am not an expert on these tools and I don't think Mr. Markham is; and he hasn't brought anybody in here to tell you what's missing off of that. Mr. Coons looked at these tools—it's this man's job, his livelihood—and he tells you what these things are worth. He wants to know if it works. Take it upstairs and try it. That's your privilege. See if it will work. (Indicating.)

"Mr. MARKHAM: I object to this, your Honor, as not being within the evidence and move it be stricken and the jury admonished not to consider it.

"THE COURT: It will be stricken and the jury will disregard it.

"Mr. DEARTH: (Indicating) . . .

"Mr. MARKHAM: He is now putting it into evidence and I move it be stricken and move for a mistrial.

"THE COURT: Sustained, the introduction of further evidence. Gentlemen of the jury, disregard any new evidence. Motion for mistrial will be overruled."

The foregoing, as to what occurred, is supplemented by an affidavit filed by appellant's counsel, who was also trial counsel, which states:

"Affiant further states that during the trial of said case there was no evidence

whatsoever that any of the exhibits offered in evidence by the State of Kansas, particularly Exhibit 3, being a Black and Decker screw gun, would operate. That no one plugged said instruments into an electrical outlet to see if it would work, and there was no evidence whatsoever on said subject; that during the argument of defendant's counsel he called to the attention of the jury that there was no evidence that any of the screw guns or any exhibits offered by the State would operate; that during the closing argument made by the County Attorney of Labette County, Kansas, he picked up State's Exhibit No. 3, being a Black & Decker screw gun, and took the electrical cord of the same and plugged it into an electrical socket on the Judge's desk and attempted to show the jury that said screw gun would operate, all of which was objected to by defendant's counsel. . . ."

Appellant's argument that the demonstration by the county attorney constituted prejudicial error is predicated on the assertion there was no proof in the record that any of the tools in question were operable and that the value of a tool depends on whether it is operable. The latter contention is not determinative of anything in this case. Beyond this, appellant's premise completely overlooks certain evidence on the subject of the working condition of the tools. The plant manager testified that a tool which was inoperable would not have been included on the inventory. The tool which was demonstrated before the jury was listed on the inventory. There was testimony in the record as to the value of the tools at the time they were taken, which is the proper standard for determining their value rather than at the time of the trial. Assuming the demonstration was irregular, we see nothing prejudicial in the whole affair and the trial court did not err in denying mistrial.

Appellant next complains the county attorney committed prejudicial error when he stated to the jury appellant's counsel had told the jurors that everything to which the plant manager had testified was false. Appellant's trial objection on the subject and motion for mistrial were overruled. Counsel now complains his statement to the jury was misrepresented and that this along with other improper actions resulted in denial of fair trial. We have examined the county attorney's entire argument and, although it may have been somewhat on the intemperate side in certain respects, we see nothing prejudicial.

Finally, appellant asserts insufficiency of evidence to support his conviction. This contention is largely bottomed on the alleged inadmissibility of the various exhibits, which issue has already been

decided against appellant. The requisite value of the purloined articles was sufficiently shown and we find nothing to warrant disturbing appellant's conviction.

Judgment affirmed.

APPROVED BY THE COURT.