No. 67,716

STATE OF KANSAS, *Appellant/Cross-Appellee,* v. LYDIA DENISE RUFF, *Appellee/Cross-Appellant.*

(847 P.2d 1258)

Opinion filed March 5, 1993.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *Larry C. Hoffman,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were on the briefs for appellant/cross-appellee.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Lydia Denise Ruff was convicted by a jury of three counts of aggravated assault, K.S.A. 21-3410. The trial judge found that the defendant used a firearm in the commission of the crimes. Defendant was subsequently sentenced by another district judge serving on the Wyandotte County Board of Probation (Board). Immediately after sentencing, the Board made a finding of manifest injustice under K.S.A. 1992 Supp. 21-4618(3) and granted defendant probation. The State appeals the finding of manifest injustice and the granting of probation. Defendant cross-appeals from her convictions, claiming the trial court erred in denying her motion for mistrial and in failing to sustain her objections to certain comments made by the State during closing argument. She also claims the evidence was insufficient to support her convictions.

On November 24, 1990, Antoinette Clark, Stephanie Stewart, Stephanie Drake, and Dawn Finney planned to meet that evening to go to a nightclub. Sometime around 10:00 p.m., the four women were taking Clark's 3-year-old daughter to the daughter's grandmother's house when they noticed Sharon Ruff's beige Oldsmobile Cutlass was following them. Sharon Ruff was in the passenger seat of the Cutlass and Sharon's sister, Lydia, was driving.

The Ruffs followed the women for some distance, at times pulling up beside Clark's vehicle and yelling at the women inside. At an intersection, Clark stopped her vehicle for a four-way stop sign. The Ruff vehicle pulled up and stopped. Lydia exited the Ruff vehicle, approached the Clark vehicle with a handgun, and

said, "Bitches, better not move." Sharon exited the Ruff car and struck and cracked the windshield of the Clark vehicle with a baseball bat. Sharon and Lydia then returned to their car and left the scene.

Lydia Ruff was charged with four counts of aggravated assault, K.S.A. 21-3410, and one count of misdemeanor criminal damage to property, K.S.A. 1992 Supp. 21-3720. At trial, after the State concluded its case in chief, Judge Lawrence G. Zukel, the trial judge, dismissed one count of aggravated assault because one of the victims, Dawn Finney, failed to appear.

Lydia and Sharon Ruff both testified that the alleged incident had not occurred. Lydia stated she was at home with her three children, talking to a friend on the telephone at 10:00 p.m. that night. She asserted she did not leave her home on November 24, 1990. Sharon also testified that she was at home with her three children on November 24, 1990. She claimed that her car, a yellow 1978 Pontiac Grand Prix, was not running that day.

Lydia Ruff was convicted by a jury of three counts of aggravated assault and acquitted of the charge of criminal damage to property. After the trial judge denied the defendant's motion for a new trial, the State requested that the court find Lydia Ruff used a firearm in the commission of the crime, so sentencing would be imposed under K.S.A. 1992 Supp. 21-4618. Judge Zukel took the matter under advisement. The judge later found that the defendant used a gun in the commission of the crimes, ordered a presentence investigation, and set the matter for sentencing.

Subsequently, the defendant appeared before the Board for sentencing and for consideration of her application for probation. The Board is composed of three Wyandotte District Court judges. Judge Zukel was not a member of the Board. The defendant was sentenced by Judge Muriel Y. Harris to the custody of the Secretary of Corrections for a term of not less than two nor more than five years on each of the three counts, with the sentences to run concurrently. The Board then found that, under K.S.A. 1992 Supp. 21-4618(3), manifest injustice would result if mandatory imprisonment was imposed, and it granted probation.

The State appealed the Board's finding of manifest injustice and the granting of probation. The State now attempts to recraft the issue on appeal, claiming (1) under K.S.A. 1992 Supp. 21-

4618 the judge who determined a firearm was used in the commission of the aggravated assaults must sentence the defendant, (2) an illegal sentence was imposed by the Board, and (3) the Board acted as an appellate court in overturning the trial judge's finding that probation could not be granted.

A party cannot raise issues on appeal which were not presented to the district court. *State v. Crawford,* 246 Kan. 231, 234, 787 P.2d 1180 (1990). Therefore, the only issue is whether the Board acted properly in granting probation.

### STATUTORY AUTHORITY FOR STATE TO APPEAL

The defendant contends that the State's appeal should be dismissed for lack of jurisdiction because (1) the sentencing was legal and (2) there is no statutory authority for the State to appeal from a trial court's imposition of a legal sentence.

An "illegal sentence" is either a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served. *State v. Frazier,* 248 Kan. 963, Syl. ¶ 4, 811 P.2d 1240 (1991). Did the Board have jurisdiction to sentence Ruff?

K.S.A. 1992 Supp. 21-4618 provides in relevant part:

"(1) Except as provided in subsection (3), probation, assignment to a community correctional services program or suspension of sentence shall not be granted to any defendant who is convicted of the commission of the crime of rape, the crime of aggravated sodomy or any crime set out in article 34 or chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime.

. . . .

"(3) The provisions of this section shall not apply to any crime committed by a person where such application would result in a manifest injustice."

Kansas statutes do not require that the trial judge be the sentencing judge. Any judge of the judicial district is authorized to pronounce sentence on a person convicted of a crime in that district. The fact that a sentencing judge is sitting as a member of a county board of paroles at the same time that the judge pronounces sentence does not constitute a delegation of judicial

authority to the board. The individual judge to whom the case was assigned for sentencing is the person responsible for sentencing, just as if he or she were sitting alone. *State v. Blackmore,* 249 Kan. 668, Syl. ¶¶ 5, 6, 822 P.2d 49 (1991). In this case, the judge had jurisdiction to sentence Ruff, the sentence conforms to the statutory provisions, and the sentence is not ambiguous in the time and manner to be served. We have reviewed the record and find that the sentence was not illegal.

## THE STATE'S APPEAL

The right to appeal is neither a vested nor a constitutional right, but is strictly statutory in nature. *State v. McDaniels,* 237 Kan. 767, Syl. ¶ 1, 703 P.2d 789 (1985). The defendant argues that neither K.S.A. 22-3602(b) nor K.S.A. 22-3603 or any other statute provides the State with the right to appeal from a sentencing decision with which it disagrees.

K.S.A. 22-3602 states in part:

"(b) Appeals to the supreme court may be taken by the prosecution from cases before a district judge as a matter of right in the following cases, and no others;

"(1) From an order dismissing a complaint, information or indictment;

"(2) rom an order arresting judgment;

"(3) upon a question reserved by the prosecution; or

"(4) upon an order granting a new trial in any case involving a class A or B felony."

K.S.A. 22-3603 states:

"When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within ten (10) days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal."

The only statutory provision for appeal which could possibly apply to the facts of this case is K.S.A. 22-3602(b)(3), an appeal by the prosecution upon a question reserved. The purpose of permitting the State to appeal on a question reserved is to allow the prosecution to obtain review of an adverse legal ruling on an issue of statewide importance which otherwise would not be subject to appellate review.

Ruff asserts that the State is attempting to overturn the probation granted to her and require her to be incarcerated. Ruff points out that such relief would have an obvious adverse effect upon her. She claims that under the guise of a question reserved and without any statutory authority, the State is attempting to create a method to appeal a judge's sentencing decision with which it disagrees.

An appeal on a question reserved is permitted to provide an answer which will aid in the correct and uniform administration of the criminal law. A question reserved by the State will not be entertained on appeal merely to demonstrate errors of a trial court in rulings adverse to the State. Questions reserved presuppose that the case at hand has concluded but that an answer is necessary for proper disposition of future cases which may arise. *State v. Puckett,* 227 Kan. 911, 912, 610 P.2d 637 (1980).

Under K.S.A. 22-3602(b), an appeal may be taken by the prosecution as a matter of right after a final judgment in the district court only in four situations and no others: (1) from an order dismissing a complaint, information, or indictment; (2) from an order of the district court arresting judgment; (3) upon a question reserved by the prosecution; and (4) upon an order granting a new trial in any case involving a Class A or B felony.

First, we note the present issue is not of statewide importance and will not aid in the correct and uniform administration of the criminal law because the grant or denial of probation is a discretionary determination. The procedure for sentencing and determining probation used by the Board of Probation of Wyandotte County is unique to Wyandotte County and has no statewide application. An order which sentences the defendant and grants probation is not appealable by the prosecution as a matter of right pursuant to K.S.A. 22-3602(b).

The right to appeal from rulings, orders, and judgments in criminal actions rests upon statutory authority which will not be enlarged or expanded by construction. *State v. Ramirez,* 175 Kan. 301, Syl. ¶ 1, 263 P.2d 239 (1953). The provisions of K.S.A. 22-3602 and 22-3603 do not provide the State the right to appeal a judge's discretion in granting probation.

CROSS-APPEAL

PROSECUTOR'S MISCONDUCT

Not every trial error or infirmity which might call for application of an appellate court's supervisory powers correspondingly constitutes a failure to observe the fundamental fairness that is essential to the very concept of justice. When specific guarantees of the Kansas Constitution Bill of Rights are involved, courts must take special care to insure that prosecutorial misconduct does not impermissibly infringe upon those guarantees. *State v. Cady,* 248 Kan. 743, Syl. ¶¶ 1, 3, 811 P.2d 1130 (1991).

One of the most frequent grounds for granting a new trial is that of improper conduct of the prosecutor in closing argument. These complaints arise from a prosecutor's comments on the defendant's silence and matters outside the record and from comments which are abusive or designed to appeal to the jury's passions or prejudices.

After Ruff's attorney had completed his argument to the jury, the prosecutor, Larry Hoffman, in his final statement to the jury, said:

"[MR. HOFFMAN]: Ladies and gentlemen of the jury, do not allow this conduct to be tolerated in our county.

"MR. SACHSE [defense counsel]: Judge, I'm objecting. That is absolutely improper argument and I'm pretty sure that the prosecutor's well aware of that.

"THE COURT: Let's wind it up.

"MR. HOFFMAN: Thank you. Send that message, ladies and gentlemen, come back with a verdict of guilty. Thank you."

Defendant points out that it is improper for a prosecutor to ask the jury to send a message to the community that the defendant's alleged conduct would not be tolerated. She claims the prosecutor's statements injected an issue which was extraneous to the jury's duty to decide the case upon the evidence presented at trial. She contends that because defense counsel made a timely objection, and the trial court failed to sustain that objection or instruct the jury to disregard the improper statement, the jury considered the statement in its deliberations, denying defendant her right to a fair trial.

The State asserts there is no evidence that the prosecutor intentionally made the comments to prejudice or inflame the jury or persisted in making the comments. The State claims the comments are vague and would not inflame the prejudice or passions

of the jury or rise above the level of harmless error. The State asserts that defendant's argument fails to consider all of the State's closing argument. The State further contends that if the comments constituted prosecutorial misconduct, the conduct was harmless error and would not require a new trial because the comments did not prejudicially affect the substantial rights of Lydia Ruff to a fair trial.

The State relies on *State v. Murrell,* 215 Kan. 10, 523 P.2d 348 (1974). The alleged misconduct in that case dealt with the State's comment, which did not concern the credibility of the defendant, but bolstered the credibility of its witness who testified against the defendant. The prosecutor stated:

"I would say this, however, ladies and gentlemen, Mr. Burnett [the State's witness] is at the Industrial Reformatory. He has now come into court and testified against somebody [the defendant]. I will leave that to your imagination as to what that means insofar as he is concerned." 215 Kan. at 11-12.

The defendant's counsel failed to object.

The *Murrell* court noted it is firmly established in this jurisdiction that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument to the jury where no objection is lodged. In affirming the conviction, the court stated that "it cannot be said that any prejudice has been shown which would jeopardize the accused's right to a fair trial." 215 Kan. at 13. The court noted the general rule that before an objectionable statement made by a prosecutor on matters outside the record will entitle the accused to a reversal of his conviction, it first must appear that it was injurious to him and was likely to affect the jurors to his prejudice. 215 Kan. at 13.

Defendant relies on *State v. Zamora,* 247 Kan. 684, 803 P.2d 568 (1990). In *Zamora,* the prosecutor stated in closing argument: "He [Zamora] has raped this victim once. If he is found not guilty, he will get away with it again." 247 Kan. at 689. The defense's timely objection was overruled by the judge.

In *Zamora,* the court noted the Model Rules of Professional Conduct, Supreme Court Rule 226 (now 1992 Kan. Ct. R. Annot. 238), addresses prosecutorial misconduct in closing arguments:

"A lawyer shall not:

. . . .

"(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." MRPC 3.4(e) (1992 Kan. Ct. R. Annot. 300).

MRPC 3.4(e) replaced and substantially incorporates Rule 225, DR 7-106(C)(1), (2), (3), and (4) (1992 Kan. Ct. R. Annot. 221). See Code Comparison following MRPC 3.4 (1992 Kan. Ct. R. Annot. 300).

The ABA Standards for prosecutors also consider jury argument:

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

"(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds." 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3-5.8 (1980).

Standard 3-5.8(d) is applicable in the instant case. See *State v. Zamora,* 247 Kan. at 691.

In *Zamora* we noted that in summing up a case before a jury, counsel may not introduce or comment on the facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in discussing it. The *Zamora* court stated that counsel may appeal to the jury with all the power and persuasiveness his learning, skill, and experience enable him to use (citing *State v. Baker,* 219 Kan. 854, Syl. ¶ 9, 549 P.2d 911 [1976]). The *Zamora* court observed that improper remarks made by the prosecuting attorney in summation to the jury will not provide a basis for reversal where the jury has been instructed to disregard the same, unless the remarks were so prejudicial as to be incurable. The court noted that rather than sustaining Zamora's objection and instructing the jury to disregard the remarks, the trial court had overruled Zamora's objection. The court found that the prosecutor's statement was an improper statement which transcended the limits of fair discussion of the evidence and could not be cured by a general instruction to the jury to disregard statements by counsel which are not supported by the evidence. 247 Kan. at 689-90. See PIK Crim. 2d 51.06.

The State asserts that in *Zamora* the factual question at trial was one of consent. In *Zamora* the evidence cut a fine line as to whether rape or consensual sex had occurred. Under the evidence, this court could not find the prosecutorial misconduct was harmless or that it would not change the outcome of the trial beyond a reasonable doubt. However, in this case, the State argues there is overwhelming evidence of Ruff's guilt and this was not a case where the passion of the jury could be swayed by a single statement. It concludes it is beyond a reasonable doubt that the State's comments had no effect upon the outcome of the verdict. We disagree with the State's conclusion. Here, the three alleged victims testified the incident occurred. In contrast, the two defendants testified the incident never occurred.

Defendant also cites *State v. Wilson,* 188 Kan. 67, 360 P.2d 1092 (1961), in support of her position. Wilson was convicted of kidnapping in the first degree, forcible rape, and inflicting great bodily harm on or endangering a life. The county attorney, in his closing argument to the jury, read the following from a newspaper report of the Caryl Chessman case:

" 'MR. FOSTER: (Reading) 'The mother of a raped girl recently was quoted as saying, 'My daughter was only seventeen when she was kidnapped. Her clothes were torn off and for hours she was terrified; she was abused, and caused her to lose her mind and life among normal human beings.' " 188 Kan. at 71.

The county attorney then referred to the victim, stating:

"Miss [P]—Connie—has recovered to a great extent. Miss [P] will, in time, be perfectly normal again, thanks to the wonderful family she has; thanks to her belief in God; thanks to the wonderful people of this town in which she lives. . . ." 188 Kan. at 71.

It is the duty of the prosecutor in a criminal matter to see that the State's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just conviction, but he should always bear in mind that he is an officer of the court and, as such, occupies a quasi-judicial position whose sanctions and traditions he should preserve. *State v. Wilson,* 188 Kan. at 73.

The *Wilson* court took the opportunity of calling attention to the duty of the district courts in jury trials to interfere in all cases, on their own motion, where counsel forget themselves so

far as to exceed the limits of professional freedom of discussion. Where counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel. The dignity of the court, the decorum of the trial, and the interest of truth and justice forbid license of speech in arguments to jurors outside the proper scope of professional discussion. 188 Kan. at 73.

The *Wilson* court observed that the prosecutor's statement was an appeal to prejudice and passion and an attempt to introduce facts not disclosed by the evidence and that the statement was extremely improper and prejudicial to defendant's rights. 188 Kan. at 72-73. The *Wilson* court found prejudicial error, stating that a prosecutor's closing argument must be confined to the law and the evidence in the case under consideration, and granted the defendant a new trial. 188 Kan. at 73-74.

Ruff asserts that the prosecutor's statement violated both her right to a fair trial and the ABA standards as applied in *Zamora* by injecting an issue broader than her guilt. She argues that the error was not harmless because the State's evidence was far from conclusive and the trial court's failure to sustain defense counsel's objection to the prosecutor's statement implied to the jury that the statement was proper. Ruff contends that under these circumstances it cannot be said beyond a reasonable doubt that the error had little likelihood of affecting the jury's verdict.

The State claims that the trial judge was in a far better position to assess the impact of the prosecuting attorney's conduct on the jury than are members of this court. When discussing a charge of misconduct on the part of trial counsel, it is best left to the trial judge in the first instance who is in position to take immediate corrective action. The State then argues the trial court did not err in failing to admonish the jury to disregard the comments of the prosecutor. The State asserts that for an admonition to be necessary, the trial court must find the comments were improper and prejudicial to defendant. The State argues that the court had no duty to admonish the jury because the State's closing argument was proper and focused entirely on the evidence. See *State v. Murrell*, 215 Kan. at 13; *Roda v. Williams*, 195 Kan. 507, 515, 407 P.2d 471 (1965).

We are surprised by this argument. The prosecutor's last statement to the jurors prior to their determination as to Ruff's guilt was that the jury had a duty to send a message to the community that certain conduct will not be tolerated. The prosecutor's statement implied that if the jury found Ruff not guilty, her conduct would be tolerated.

The prosecutor is under a duty to insure that only competent evidence is submitted to the jury. Above all, the prosecutor must guard against anything that could prejudice the minds of the jurors and hinder them from considering only the evidence adduced. The prosecutor's statement was improper and transcends the limits of fair discussion of the evidence. The improper remark by the prosecutor in his summation to the jury would not have provided a basis for reversal of Ruff's conviction if the trial judge, rather than approving the remark after defense counsel objected, had instructed the jury to disregard the remark. Under these circumstances, a general instruction given prior to the improper statement that statements and remarks of counsel are not evidence and should not be considered as evidence does not protect the defendant's right to a fair trial.

We are unable to find beyond a reasonable doubt that the prosecutor's misconduct did not deprive the defendant of her constitutional right to a fair trial.

Appeal of the State is dismissed. Reversed on cross-appeal and remanded for a new trial.