No. 70,221

STATE OF KANSAS, *Appellee*, v. JEFFREY A. SPRESSER, *Appellant*.

(896 P.2d 1005)

Opinion filed June 2, 1995.

*Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Athena E. Andaya*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Jeffrey A. Spresser appeals his jury trial convictions of rape (K.S.A. 21-3502), aggravated kidnapping (K.S.A. 21-3421), and aggravated criminal sodomy (K.S.A. 21-3506).

C.M. and her husband met defendant at a Topeka bar where the latter worked as manager. The three became friends and defendant frequently visited the couple's residence. In October 1991 C.M.'s husband commenced serving a prison term, and C.M. returned to her parents' home in Lawrence. C.M.'s father died on August 12, 1992. During the early evening of August 27, 1992, defendant telephoned C.M., stating he had been out-of-state and

had just learned of the death of C.M.'s father. Defendant asked if he could help C.M. or her mother in any way. Then he asked C.M. out to dinner. C.M. was undecided on the invitation and asked defendant to call back. When defendant called back, C.M. accepted and defendant came by for her at her mother's home. The two then proceeded to the Flamingo, a Lawrence bar.

At approximately 11:30 p.m. they left the Flamingo. C.M. wanted to go home (the Lawrence residence of her mother). Defendant wanted C.M. to go with him to pick up his daughter in Topeka. When defendant drove past C.M.'s residence, she again stated that was where she wanted to go. Defendant continued to Topeka. C.M. testified defendant struck her several times while they were en route and forced her to perform oral sex on him. Defendant drove to his trailer in Topeka, pulled C.M. from the truck and walked her inside the trailer. There he demanded and received oral sex. He struck C.M. repeatedly about the head. C.M. started gagging and went into the bathroom. Defendant entered the bathroom and took C.M. down the trailer's hallway to a dark bedroom.

Defendant then stripped off C.M.'s clothes and put some of his fingers in her vagina. C.M. was beaten until she passed out. When she awoke she found herself on the bed with her hands tied. Defendant untied her and told her to get dressed, and that he would take her home. In Douglas County on the way to Lawrence, defendant forced C.M. to perform another act of oral sex and attempted to have sexual intercourse with her. Defendant left C.M. at her mother's house with the warning that if she told anybody about what had happened he would kill her and her mother.

The police were called and C.M. was taken to a Lawrence hospital. She had multiple trauma signs on her head and face. Defendant was charged with and convicted of aggravated kidnapping, rape, and aggravated criminal sodomy.

## MOTION IN LIMINE

For his first issue, defendant contends the trial court's denial of his motion in limine constitutes an abuse of judicial discretion. The testimony sought to be excluded concerned an incident in the truck

while defendant and C.M. were on their way to the Flamingo. C.M. said that, upon seeing a Lawrence police car, defendant stated there was a warrant out for his arrest and that if the officer stopped defendant's pickup, he would shoot the officer.

At the hearing on the motion, defendant argued that C.M. did not actually see a weapon and that testimony about other troubles with the law was prejudicial to the defendant. The State argued that the statement was pertinent to C.M.'s state of mind as force and fear were elements which had to be proven. The trial court agreed with the State. The objection was renewed at trial. The State again stated the statement was relevant to C.M.'s state of mind. The court held the evidence was relevant "as long as it's tied up." At the conclusion of C.M.'s testimony, defense counsel sought a mistrial, stating:

"There was no testimony that I can recall from [C.M.] that indicated that his statement about having a warrant out for him or about a threat to the police officers if stopped had anything to do with the fear or the force which was used to commit these alleged crimes. It was just simply thrown out there. It was never tied up the way the State made the proffer to the Court. And consequently, they succeeded in admitting prejudicial testimony which was not related to the offense or the force or the threat which is the element of the offenses of which Mr. Spresser is charged. So I request a mistrial."

The State acknowledged that C.M. did not specifically tie in her testimony to defendant's comment about shooting the police officer if he was stopped, "but she emphasized more and more about how scared she was and her state of mind as far as her fright of this defendant . . . . She made it perfectly clear about her fright."

The court, after noting that it had thought that C.M.'s state of mind was going to be tied in to some reference to the incident and that "it didn't play like I thought it should or anticipated it would play," found that the statement, nevertheless, was probative. Defense counsel then renewed his motion in limine as to the testimony of any police officer regarding C.M.'s reference to defendant's statement. The court overruled that objection, stating that the evidence was relevant to C.M.'s credibility. The court overruled defense counsel's contemporaneous objection when Officer Wempe testified regarding the statement.

The abuse of discretion standard is applied in reviewing a motion in limine. The admission or exclusion of evidence is in the sound discretion of the trial court. *State v. Rowell*, 256 Kan. 200, Syl. ¶ 2, 883 P.2d 1184 (1994). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Baker*, 255 Kan. 680, Syl. ¶ 9, 877 P.2d 946 (1994).

In *State v. Massey*, 242 Kan. 252, 265, 747 P.2d 802 (1987), we stated that a motion in limine should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence, and (2) the mere offer of or statements made during the trial concerning the material will tend to prejudice the jury.

The crux of defendant's argument is that unless the victim made reference specifically to the complained-of statements as a basis for her fright or fear, the same were inadmissible as the State indicated there would be such testimony. It is true the State advised the trial court there would be such a tie-in in C.M.'s testimony and the trial court denied the motion based upon the anticipated tie-in. However, such a specific tie-in was unnecessary for the admissibility of the testimony.

Evidence that has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction and is not rendered inadmissible because it may disclose other or independent offenses. The law allows the admission of evidence as part of the res gestae of acts made before, during, or after the principal event. *State v. Bowman*, 252 Kan. 883, Syl. ¶¶ 2, 5, 850 P.2d 236 (1993). If the evidence is a part of the res gestae of the offenses for which a defendant is being tried, such evidence may be introduced independent of K.S.A. 60-455. See *State v. Gilder*, 223 Kan. 220, 228, 574 P.2d 196 (1977).

Acts done or declarations made before, during, or after the happening of the principal fact may be admissible as part of the res gestae where they are so closely connected with it as to form in

reality a part of the occurrence. Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish. *State v. Davis*, 236 Kan. 538, 539, 694 P.2d 418 (1985).

For lack of a better term, the "date" between defendant and the victim was the occurrence from which the crimes herein arise. For res gestae purposes, the date is not a series of segments. It is not necessary that there be specific cause-and-effect testimony for the complained-of statement to be admissible as to a victim's state of mind. With the res gestae concept, testimony as to what was said or done is admissible because it was said or done. The defendant had the burden of showing why such admissible testimony should be excluded. This he has not done. The trial court may have unnecessarily relied upon the State's promised specific tie-in of testimony to support its ruling, but this does not affect the propriety of its determination.

We find no error or abuse of discretion in the trial court's denial of defendant's motion in limine and motion for a mistrial.

## PROSECUTORIAL MISCONDUCT

In his next issue, defendant contends that a statement made by the prosecutor during closing arguments was so prejudicial that, despite a judicial admonition to the jury to disregard the statement, the conviction must be reversed. We do not agree.

During the defendant's closing argument, the following occurred:

"[DEFENSE COUNSEL]: You don't send somebody to prison or subject them to the possibility—you are not to consider—
"[STATE'S ATTORNEY]: Your Honor, I object.
"[DEFENSE COUNSEL]:—you are not to consider punishment. I don't mean to get into that. I'll get away from that.
"[STATE'S ATTORNEY]: Thank you.
"[DEFENSE COUNSEL]: You don't send somebody to prison for a crime unless you are darn sure."

In the second half of the State's closing argument, the prosecutor responded to these comments as follows:

"[STATE'S ATTORNEY]: . . . [A]nd you are not supposed to consider disposition. So when he [defense counsel] said send anyone to prison, we don't know—that is for the Court to decide. You are not to consider the disposition. *At the same time you may have other victims' lifes [sic] in your hands if we release him.*
"[DEFENSE COUNSEL]: Objection, Your Honor.
"THE COURT: Sustained, disregard the last comment of the prosecutor." (Emphasis supplied.)

The emphasized portion in the preceding quote is the claimed prosecutorial misconduct.

The State's position is that (1) the prompt recognition by the trial court of the objectionable aspect's of the State's comment by sustaining defendant's objection and admonishing the jury to disregard the comment cured any possible prejudice to the defendant; and (2) the State was merely responding to previous arguments of defense counsel, noting that there is no prejudicial error where a prosecutor's questionable statements were provoked and made in response to previous arguments of defense counsel. See *State v. Robinson*, 219 Kan. 218, 221, 547 P.2d 335 (1976).

In *State v. Duke*, 256 Kan. 703, 718-20, 887 P.2d 110 (1994), we reviewed the rules concerning a prosecutor's role in closing arguments:

"In criminal trials, the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial. *State v. Green*, 254 Kan. 669, 685, 867 P.2d 366 (1994).

. . . .

"In closing argument to the jury, the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. *State v. Kelley*, 209 Kan. 699, 704, 498 P.2d 87 (1972). In closing argument, an attorney may indulge in impassioned bursts of oratory or may use picturesque language as long as he or she introduces no facts not disclosed by the evidence. *State v. Majors*, 182 Kan. 644, 648, 323 P.2d 917 (1958).

"In summing up a case before a jury, the prosecutor may not introduce or comment on the facts outside the evidence, but reasonable inferences may be

drawn from the evidence and considerable latitude is allowed in discussing it. *State v. Zamora*, 247 Kan. 684, 687-88, 803 P.2d 568 (1990). Counsel may appeal to the jury with all the power and persuasiveness his or her learning, skill, and experience enable counsel to use. *State v. Baker*, 219 Kan. 854, Syl. ¶ 9, 549 P.2d 911 (1976)."

The State concedes the complained-of sentence was improper. We do not find that it may be excused on the basis of provocation.

Does the improper comment require reversal? We believe not.

Defendant cites *State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990), in support of his position. In *Zamora*, the prosecutor, in closing argument, stated: "He [Zamora] has raped this victim once. If he is found not guilty, he will get away with it again." 247 Kan. at 689. Zamora objected. The trial court overruled the objection. We found reversible error therein, reasoning:

"In the case at bar, the prosecutor's statement was improper. The statement transcends the limits of fair discussion of the evidence. Rather than sustaining Zamora's objection and instructing the jury to disregard the remarks, the trial court overruled Zamora's objection. The result is prejudicial error." 247 Kan. at 690.

In the case before us, the trial court sustained defendant's objection and instructed the jury to disregard the remarks. Therefore, *State v. Zamora*, 247 Kan. 684, may be distinguished.

In *State v. Jordan*, 250 Kan. 180, 825 P.2d 157 (1992), the prosecutor argued to the jury: "And if you want to live in a community where a person can kill another person . . . in the manner that this was conducted and excuse it because he had a few drinks, that's up to you." 250 Kan. at 193. The trial court sustained the defendant's objection that the prosecutor was trying to inflame the jury.

We agreed that the prosecutor's argument was improper and noted that the argument violated the Model Rules of Professional Conduct. 250 Kan. at 196. However, we held that the violation was not reversible error because the jury was instructed several times during closing argument that statements of counsel were not evidence. Further, the trial court had sustained the objection to the remark, and we noted that the defendant had not requested a mistrial or that the jury be admonished to disregard that remark. 250 Kan. at 197.

In *State v. Perales*, 220 Kan. 777, 556 P.2d 172 (1976), the prosecutor stated during closing argument that the defendant committed the crime and would do it again unless he was convicted. The defendant objected. The trial court sustained the objection and instructed the jury as follows: "I will sustain that objection to the extent, members of the jury, that what might happen in the future is pure conjecture and not to be considered." 220 Kan. at 780. We found that the prompt action of the trial court cured any possible prejudice to the defendant, quoting the rule from *State v. Warbritton*, 215 Kan. 534, Syl. ¶ 1, 527 P.2d 1050 (1974): " 'Improper remarks made by the prosecuting attorney in his summation to the jury will not provide a basis for reversal where the jury has been instructed to disregard the same, unless the remarks were so prejudicial as to be incurable.' " 220 Kan. at 780. The trial court's instruction in *Perales* was held to have cured any possible prejudice to the defendant.

In *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993), the prosecutor, in closing argument, stated:

"[MR. HOFFMAN]: Ladies and gentlemen of the jury, do not allow this conduct to be tolerated in our county.
"MR. SACHSE [defense counsel]: Judge, I'm objecting. That is absolutely improper argument and I'm pretty sure that the prosecutor's well aware of that.
"THE COURT: Let's wind it up.
"MR. HOFFMAN: Thank you. Send that message, ladies and gentlemen, come back with a verdict of guilty. Thank you." 252 Kan. at 631.

Defendant argued that the prosecutor's statement violated her right to a fair trial and American Bar Association Standards for prosecutors by injecting an issue broader than guilt. Defendant further argued that the error was not harmless because the State's evidence was not conclusive and the trial court's failure to sustain defense counsel's objection implied to the jury that the statement was proper. 252 Kan. at 635.

This court found reversible error, reasoning:

"The prosecutor is under a duty to insure that only competent evidence is submitted to the jury. Above all, the prosecutor must guard against anything that could prejudice the minds of the jurors and hinder them from considering only the evidence adduced. The prosecutor's statement was improper and transcends

the limits of fair discussion of the evidence. The improper remark by the prosecutor in his summation to the jury would not have provided a basis for reversal of Ruff's conviction if the trial judge, rather than approving the remark after defense counsel objected, had instructed the jury to disregard the remark. Under these circumstances, a general instruction given prior to the improper statement that statements and remarks of counsel are not evidence and should not be considered as evidence does not protect the defendant's right to a fair trial." 252 Kan. at 636.

Although we have recognized there may be remarks that are so prejudicial as to be incurable, neither the briefs of counsel nor our research has disclosed a case where we have held the remark to be incurable. The facts herein do not support declaring the improper remark to be the first incurable remark in our case law. It is difficult to understand why such an experienced prosecutor as the Shawnee County District Attorney would make such a patently improper comment in closing argument, but that fact does not alter the outcome of this issue. We find no reversible error in this issue.

## LESSER INCLUDED OFFENSE

The defendant requested that the jury be instructed on unlawful restraint (K.S.A. 21-3424) as a lesser included offense of aggravated kidnapping. For his next issue defendant contends the trial court's denial of this request constitutes reversible error. We do not agree.

A trial court has the affirmative duty to instruct the jury on all lesser included offenses established by the evidence. Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. An instruction on a lesser included offense is not required, however, if the evidence at trial excludes a theory of guilty on the lesser offense. The duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at the trial is such that the defendant might reasonably have been convicted of the lesser offense. *State v. Deggs*, 251 Kan. 342, 344, 834 P.2d 376 (1992); *State v. Dixon*, 248 Kan. 776, Syl. ¶ 1, 811 P.2d 1153 (1991).

The instruction on the elements of aggravated kidnapping provided, in pertinent part, that the State had to prove:

"1) That the defendant, Jeffrey Allen Spresser, intentionally took and/or confined [C.M.] by force or threat of force;

"2) That this act was done with the intent to hold [C.M.] to inflict bodily injury;

"3) That bodily harm was inflicted on [C.M.]; and

"4) That this act occurred on or about the 28th day of August, 1992, in Shawnee County, Kansas."

The instruction on unlawful restraint proposed by defendant provided, in pertinent part:

"To establish this charge each of the following claims must be proved:

"1. That the defendant knowingly and without legal authority restrained [C.M.] so as to interfere substantially with her liberty; and

"2. That this act occurred on or about the 28th day of August, 1992, in Shawnee County, Kansas."

Defendant does not argue that unlawful restraint was a crime necessarily proven under *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). Rather, defendant argues that under the facts herein, the jury could have found that there was no aggravated kidnapping of C.M., only the unlawful restraint of her person. Unlike many sex crime cases, this contention does not arise out of the factual situation that the defendant and the victim have testified to different versions of what transpired between them. In the case before us, the defendant did not testify, so there is no defendant's version. Rather, the defendant relies on the following facts. The State in its closing argument stated that the aggravated kidnapping commenced when defendant took C.M. from the bathroom to the bedroom. The act of aggravated criminal sodomy for which defendant was being tried was the sodomy which occurred in the living room of the trailer. This occurred prior to the State's theory of when the aggravated kidnapping commenced. When C.M. was being questioned by police officers during their investigation, she told one officer that defendant attempted to rape her with his penis in the bedroom, but did not achieve penetration. She told the officer defendant did not put fingers inside her. Defendant's argument is that the jury could have believed this version of what happened. If so, defendant argues that the bodily harm element of aggravated kidnapping would have been absent and the jury could have con-

victed of unlawful restraint. He argues the attempted rape described in this version does not constitute bodily harm.

This argument lacks merit. C.M.'s testimony at trial was that she was raped by defendant in the bedroom of the trailer. Any prior inconsistent statements go to the weight to be afforded C.M.'s testimony. The jury obviously believed C.M.'s testimony as to what happened in the bedroom as it convicted defendant of rape. Further, the bodily harm element of aggravated kidnapping is not wholly dependent on the rape. Defendant retained total control over C.M. until he let her out of his truck in Lawrence with the threat he would kill C.M. and her mother if C.M. told anybody what had happened. Under C.M.'s undisputed testimony, between the time defendant dragged her out of the bathroom and when she was returned home, in addition to being raped, she was beaten until she passed out and was also the victim of another act of sodomy during the trip back to Lawrence.

Defendant argues that C.M.'s prior inconsistent statement is particularly significant since under the information (and instruction) the State had to prove the taking or confining of C.M. was done with intent to inflict bodily harm on C.M. as opposed to other statutory kidnapping intents. To prove aggravated kidnapping the State had to prove both bodily harm and the intent to inflict bodily harm. There was no claim any bodily harm was accidental and not the result of an unintended act.

We have reviewed the record and conclude that, under the circumstances herein, defendant could not reasonably have been convicted of unlawful restraint had the jury been instructed on same as a lesser included offense. Accordingly, the refusal to give such an instruction was not error.

The judgment of the district court is affirmed.

ABBOTT, J., concurring: I concur in the majority opinion, but express my separate concern that we have painted defendants into a corner. Despite our recognition that a prosecutor's argument to a jury can be so prejudicial as to be incurable, the rule we enforce is that if the defendant does not object to an improper closing argument the error is waived and if the defendant objects and the

trial judge instructs the jury to disregard the improper argument the error is cured.

I am very concerned that prosecutors who have an ethical obligation to insure that defendants receive a fair trial are aware of this court's tendency as set forth above. We are seeing far too many unethical, improper closing arguments. If this trend continues, I see no alternative but to grant a new trial even though the trial judge instructs the jury to disregard the improper remarks.

For a discussion on the subject see Johnson and Southard, *Prosecutorial Misconduct in Closing Argument: Does Harmless Error Mean Never Having to Say "Reversed?"*, 49 J.K.B.A. 205 (1980).

SIX and DAVIS, JJ., join the foregoing concurring opinion.