(948 P.2d 1145)

No. 76,020

STATE OF KANSAS, *Appellee*, v. JOHN J. PRICE, *Appellant*.

Opinion filed November 26, 1997.

*Elizabeth Seale Cateforis*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Allen B. Angst*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., STEPHEN D. HILL, District Judge, assigned, and PAUL E. MILLER, District Judge, assigned.

KNUDSON, J.: John J. Price has brought this direct appeal from his jury trial convictions for aggravated criminal sodomy, K.S.A. 21-3506(a) (Ensley 1988); indecent liberties with a child, K.S.A. 21-3503(a)(1) (Ensley 1988); and three counts of aggravated incest,

K.S.A. 21-3603 (Ensley 1988). Included in the allegations against Price were that he molested A.O., his stepdaughter, when she was 15-16 years old, and later engaged in a drug-induced *menage a trois* with A.O. and her friend S.G., also 15 years of age.

Price contends on appeal: (1) There was prosecutorial misconduct during closing argument that prejudiced his right to a fair trial; (2) the trial court erred in certain evidentiary rulings; and (3) the erroneous introduction of an unredacted police report into the jury room during deliberations prejudiced his right to a fair trial. We disagree.

### Prosecutorial Misconduct

On appeal, Price argues that comments made by the prosecutor during closing argument denied him a fair trial.

The Dickinson County Attorney argued, "[S.G.] and [A.O.] verify one another's stories. So does Heather Kabler, and if time permitted, *who knows how many other instances that we could find.*" (Emphasis added.) Defense counsel interposed a timely objection, and the trial court responded, "I agree." Defense counsel apparently was satisfied with the ruling and did not request a mistrial or ask that the jury be admonished to disregard the remark.

As a general rule, reversible error cannot be based upon improper argument by counsel unless there is a timely objection *and* a request that the jury be admonished to disregard the improper statements. *State v. Fleury*, 203 Kan. 888, 896, 457 P.2d 44 (1969).

The following argument was then made:

"[PROSECUTOR]: Judge William Blackstone, who wrote the common-law primer for every student of law and legal practitioner, Blackstone, who is considered the preeminent and most recognized authority on English common-law, stated, in the year 1650, incest and willful adultery were made capital crimes, but also the repeated act of committing fornication was upon a second conviction made felony without benefit of clergy.

"The crimes that the defendant committed were not simply crimes against two girls, one 16 and one 15, they were crimes against society as a whole, and they have been crimes against society as a whole for hundreds of years.

"[DEFENSE COUNSEL]: Your Honor, I'm going to object. This is totally inappropriate. It's obviously calculated to incite prejudice of the jury. What the history of these charges have been throughout time is just simply not appropriate argument.

"THE COURT: Your objection is noted."

We find the prosecutor's reference to Blackstone and to the nature of certain crimes at English common law to be improper argument, but hardly of a tenor that raises a concern that Price's right to a fair trial was impaired. We are also not persuaded the prosecutor's comments should be construed as appealing to the self-interests of the jurors. While the trial court should have sustained the defendant's objection, prejudicial error did not occur.

Price's final suggestion of objectionable argument concerned the county attorney's exhortation to the jury that it should follow the law and to do otherwise would be "to lower this standard in our community of Dickinson County, Kansas, to lower that standard in our state . . . and to lift a veil of protection that we have on our children."

At trial, defense counsel did not interpose an objection to the above argument. As previously noted, the absence of a contemporaneous objection will generally foreclose appellate review because Kansas does not follow the plain error rule. *State v. Marshall & Brown-Sidorowicz*, 2 Kan. App. 2d 182, 197, 577 P.2d 803, *rev. denied* 225 Kan. 846 (1978).

However, regardless of whether there is a contemporaneous objection lodged, the prosecutor and the trial judge have independent duties to protect a defendant's right to a fair trial. In *State v. Wilson*, 188 Kan. 67, 73, 360 P.2d 1092 (1961), the court stated:

"It is the duty of the county attorney in a criminal prosecution to see that the state's case is properly presented with earnestness and vigor, and to use every legitimate means to bring about a just conviction, but he should always bear in mind that he is an officer of the court and, as such, occupies a quasi-judicial position whose sanctions and traditions he should preserve."

Then, addressing the duty of a trial judge, the *Wilson* court stated:

" 'Where counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel. The dignity of the court, the decorum of the trial, the interest of truth and justice forbid license of speech in arguments to jurors outside of the proper scope of professional discussion.' " 188 Kan. at 73.

We also note the following statements from Justice Abbott's concurring opinion (with Justices Six and Davis joining) in *State v. Spresser*, 257 Kan. 664, 674-75, 896 P.2d 1005 (1995):

"[T]he rule we enforce is that if the defendant does not object to an improper closing argument the error is waived and if the defendant objects and the trial judge instructs the jury to disregard the improper argument the error is cured.

"I am very concerned that prosecutors who have an ethical obligation to insure that defendants receive a fair trial are aware of this court's tendency as set forth above. We are seeing far too many unethical, improper closing arguments. If this trend continues, I see no alternative but to grant a new trial even though the trial judge instructs the jury to disregard the improper remarks."

Based upon the reasoning in *Wilson* and Justice Abbott's concurring opinion in *Spresser*, we doubt that strict application of the contemporaneous objection rule is justified when highly inflammatory and intemperate closing arguments constitute incurable prejudice.

We are deeply concerned with the content and tenor of the statements made by the Dickinson County Attorney during the closing argument. The statements that we have noted in this opinion were improper and beyond the limit of zealous and robust advocacy. However, we have carefully considered the record and conclude beyond a reasonable doubt that the remarks did not substantially prejudice Price's right to a fair trial. The cumulative evidence against him was substantial and compelling. The direct evidence given by A.O. and S.G. was corroborated by A.O.'s mother and by Heather Kabler. There was also physical evidence that supported the State's allegations against Price. Finally, there was evidence that he attempted to suborn perjury. Under the totality of circumstances shown by the evidence, the prosecutorial misconduct in closing argument does not constitute incurable prejudice that would warrant a new trial.

### The Unredacted Police Report

During the trial, a police officer's report was admitted by the trial court with the understanding by court and counsel that it would be appropriately redacted before being sent into the jury room during deliberations. Unfortunately, it was not. We do not know how long the jury had been in deliberations when the mistake

was called to the trial court's attention. When the court and counsel realized the mistake, the jury was returned to the courtroom. The trial court explained to the jury that it had been given the exhibit by mistake and was instructed to disregard whatever it had read and was to consider only the properly redacted exhibit. Price did not object to the actions taken by the trial court, nor did he suggest any other alternative.

Price does not claim the trial court abused its discretion in its efforts to rectify the mistake. Rather, Price contends the mere introduction of the tainted evidence into the jury room, regardless of the trial court's subsequent efforts, deprived him of a fair trial. Price argues our standard of review is to determine whether the error is harmless beyond a reasonable doubt. See *State v. Thompson*, 221 Kan. 176, 182, 558 P.2d 93 (1976). We do not believe that is the standard of review under the circumstances shown of record.

Obviously, it was a mistake that the unredacted exhibit went to the jury room when deliberations began. However, the trial court took prompt action to rectify the mistake, and Price did not object to the trial court's actions nor suggest that jurors should be individually questioned to determine if any of them had read the unredacted exhibit. Price should not be allowed to acquiesce by silence in the action taken by the trial court and then argue for the first time in a post-trial motion or on appeal that the efforts were ineffectual. See *State v. Smith*, 232 Kan. 128, 132, 652 P.2d 703 (1982) (a litigant may not encourage a court to proceed in a certain manner and then attack such procedure on appeal).

Even if we consider the issue under the appellate standard urged by Price, we conclude there has been no showing of prejudicial error. Price did not, at trial or by any post-trial motion, bring forth any evidence to demonstrate jurors read the unredacted exhibit or were influenced by it in deliberations. The jury found Price not guilty of one count of indecent liberties with S.G. The jury's guilty verdicts are supported by substantial direct evidence. We conclude that the transient introduction of the unredacted exhibit during jury deliberations did not affect the verdicts and Price's substantive rights were not violated.

## Introduction of Photograph

During the State's case in chief, a photograph of S.G. in a provocative pose was introduced into evidence. The photograph was ostensibly taken by Price and would certainly suggest Price knew S.G. more than just casually. Price's sole objection at trial was that of surprise. Later during the trial, Price's attorney acknowledged there was no basis for the claim of surprise.

On appeal, Price contends that the picture of a naked S.G. was not relevant and that it was prejudicial. His complaint is that the picture was purportedly taken about 2 years after the alleged criminal acts lodged against him and thus had nothing to do with what happened in 1992.

Price made no contemporaneous objection as required by K.S.A. 60-404 that would support the legal argument he now raises on appeal. At trial, his only objection was one of surprise. Failure to state the specific grounds to support an objection that is overruled precludes appellate review. See *State v. Cooper*, 252 Kan. 340, 349, 845 P.2d 631 (1993).

Moreover, K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." Reasonable individuals could agree with the trial court that a provocative photograph of a naked 16-year-old girl taken in a hotel room by Price is relevant in determining whether he had a prior sexual relationship with S.G. Even if we reached the merits of this issue, we would not conclude the trial court abused its discretion.

## Rebuttal Evidence

As noted above, the State presented two rebuttal witnesses. The first was a friend of A.O. and S.G.'s, Heather Kabler, who testified that A.O. had told her in 1992 of the sexual contact with Price, and that in 1992 or 1993, Price had supplied Heather with drugs and forced her to show him her breasts. The second rebuttal witness was Jim Lynn. Lynn testified that he was in jail with Price a month before trial and that Price offered to pay him $5,000 to get S.G. to change her testimony.

On appeal, Price argues that neither of the witnesses rebutted his testimony and, therefore, the testimony should not have been

admitted. In *State v. Prouse*, 244 Kan. 292, 296, 767 P.2d 1308 (1989), the Supreme Court quoted *State v. Lovelace*, 227 Kan. 348, Syl. ¶ 7, 607 P.2d 49 (1980), stating:

" 'Rebuttal evidence is that which contradicts evidence introduced by an opposing party. *It may tend to corroborate evidence of a party who first presented evidence* on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. *Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony.*' " (Emphasis added.)

" ' "The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." ' *State v. Richard*, 235 Kan. 355, 360, 681 P.2d 612 (1984) (quoting *State v. Weigel*, 228 Kan. 194, Syl. ¶ 9, 612 P.2d 636 [1980]." *State v. Allison*, 259 Kan. 25, 36, 910 P.2d 817 (1996).

While it is true that "[r]ebuttal evidence is limited to issues placed in conflict by the adverse party," *State v. Allison*, 259 Kan. at 36 (citing *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 742, 822 P.2d 617 [1991]), this does not mean that the rebuttal evidence must specifically refute the exact testimony of the defendant. When the defense has placed an *issue* in conflict, rebuttal testimony is then proper to corroborate testimony by the State which tends to refute the issue in contention. See *State v. Rice*, 261 Kan. 567, 580, 932 P.2d 981 (1997); *Allison*, 259 Kan. at 36.

Price testified that he did not have sexual relations with A.O. or supply her with drugs. Kabler's testimony directly corroborated A.O.'s testimony and was proper rebuttal to impeach the testimony given by Price.

Lynn's testimony was also proper impeachment of Price's testimony. Price unequivocally denied having an illicit sexual relationship with S.G. and A.O. His assertions do not square with offering Lynn $5,000 to suborn S.G.'s testimony.

Price's issue regarding the rebuttal evidence is utterly without merit.

Affirmed.